UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EMILE BADIBANGA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 09-1781 (RMC) |
| ) | |
| HOWARD UNIVERSITY HOSPITAL, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

Emile Badibanga, a former employee of Howard University Hospital (the "Hospital"), filed a two count Complaint, alleging termination of his employment in retaliation for engaging in protected activities (Count I) and discrimination arising from a hostile work environment (Count II), both in violation of Title VII, 42 U.S.C. §2000e-16, and the D.C. Human Rights Act, D.C. Code § 2-1402.11.  The Hospital moves to dismiss the hostile work environment claim because Mr. Badibanga's allegations do not rise to the level required to make out such a claim.  Because the allegations do not indicate that the workplace was permeated with discriminatory intimidation, ridicule, and insult or that the behavior that to which Mr. Badibanga was subjected was sufficiently severe or persuasive to alter the conditions of employment, Mr. Badibanga has failed to state a hostile work environment claim.  The Court will grant the Hospital's motion and will dismiss Count II of the Complaint.

**I.  FACTS**

Mr. Badibanga, a native of the Democratic Republic of the Congo, was hired in July

of 2003 to work as a Phlebotomy Processing Assistant at the Hospital. He alleges in his Amended Complaint that in early 2006 he was called to testify before the Hospital's Human Resources Department on behalf of coworkers who claimed they were being terminated due to their race and/or national origin. Am. Compl. ¶ 17. The managers of the Phlebotomy Department, Michelle Best and Gina Mattia, offered Mr. Badibanga two hours of leave so he could avoid testifying. *Id*. ¶ 18. Despite this offer, Mr. Badibanga testified. *Id*. ¶ 19. Mr. Badibanga alleges that after he testified he was subjected to constant harassment by Ms. Best and Ms. Mattia. *Id*. ¶ 20. He alleges that the harassment included "receiving multiple disciplinary actions for things for which he was not responsible." *Id*. ¶ 21. Another supervisor, Rozel Craig, allegedly told Mr. Badibanga that there were many Americans searching for a job and it would be easy to replace him. *Id*. ¶ 58. He asserts that the harassment culminated in March 2008 when he was placed on administrative leave due to a false accusation of misconduct; he disputed the allegation and then received untimely notice that he was to attend a meeting that had already taken place. *Id*. ¶ 22-24. Mr. Badibanga was terminated on March 13, 2008. *Id*. ¶ 27.

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the adequacy of a complaint on its face, testing whether a plaintiff has properly stated a claim. Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). A complaint must be sufficient "to give a defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Although a complaint does not need detailed factual allegations, a plaintiff's obligation to provide

the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* The facts alleged "must be enough to raise a right to relief above the speculative level." *Id.* Rule 8(a) requires an actual showing and not just a blanket assertion of a right to relief. *Id.* at 555 n.3. "[A] complaint needs *some* information about the circumstances giving rise to the claims." *Aktieselskabet Af 21. Nov. 2001 v. Fame Jeans, Inc.*, 525 F.3d 8, 16 n.4 (D.C. Cir. 2008) (emphasis in original).

In deciding a motion under Rule 12(b)(6), a court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits or incorporated by reference, and matters about which the court may take judicial notice. *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is "plausible on its face." *Twombly*, 550 U.S. at 570. When a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged, then the claim has facial plausibility. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.

A court must treat the complaint's factual allegations as true, "even if doubtful in fact." *Twombly*, 550 U.S. at 555. But a court need not accept as true legal conclusions set forth in a complaint. *Iqbal*, 129 S. Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-

pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 1950.

### III.  ANALYSIS

Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating on the basis of race, color, religion, sex, or national origin in hiring decisions, in compensation, terms and conditions of employment, and in classifying employees in a way that would adversely affect their status as employees.  42 U.S.C. § 2000e-16.  Similarly, the D.C. Human Rights Act makes it unlawful for an employer "[t]o fail or refuse to hire, or to discharge, any individual; or otherwise to discriminate against any individual, with respect to his compensation, terms, conditions, or privileges of employment, including promotion" based upon "the actual or perceived: race, color, religion, national origin, sex, age, marital status, personal appearance, sexual orientation, gender identity or expression, family responsibilities, genetic information, disability, matriculation, or political affiliation of any individual."  D.C. Code § 2-1402.11(a)(1).  Employment discrimination claims under the D.C. Human Rights Act are analyzed using the same legal framework as federal employment discrimination claims.  *See McFarland v. George Wash. Univ.*, 935 A.2d 337, 346 (D.C. 2007).

"The phrase 'terms, conditions, or privileges of employment' evinces a congressional intent to strike at the entire spectrum of disparate treatment of men and women in employment, which includes requiring people to work in a discriminatorily hostile or abusive environment." *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986)) (internal quotation marks omitted).  Therefore, Title VII is violated when a plaintiff demonstrates that the "workplace is permeated with discriminatory intimidation, ridicule, and insult"

and that this behavior is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris*, 510 U.S. at 21. To establish a prima facie hostile work environment claim, a plaintiff must demonstrate (1) that he is a member of a protected class, (2) that he was subject to unwelcome harassment, (3) that the harassment occurred because of his race, (4) that the harassment affected a term, condition, or privilege of employment, and (5) that the employer knew or should have known of the harassment, and failed to act to prevent it. *Lester v. Natsios*, 290 F. Supp. 2d 11, 22 (D.D.C. 2003) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)).

In determining whether a hostile work environment claim is substantiated, a court must look at all the circumstances of the plaintiff's employment, specifically focusing on such factors as the frequency of the discriminatory conduct, its severity, whether it was threatening and humiliating or was merely offensive, and whether it unreasonably interfered with the employee's work performance. *Harris*, 510 U.S. at 23. The conduct must be sufficiently extreme to constitute an alteration in the conditions of employment, so that Title VII does not evolve into a "general civility code." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). Consequently, "mere utterance of an . . . epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment to implicate Title VII." *Harris*, 510 U.S. at 21 (internal quotation marks omitted). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher*, 524 U.S. at 778. Further, a plaintiff must demonstrate that the alleged events leading to the hostile work environment were connected, since "discrete acts constituting discrimination or retaliation claims . . . are different in kind from a hostile work environment claim

that must be based on severe and pervasive discriminatory intimidation or insult." *Lester*, 290 F. Supp. 2d at 33 (citing *AMTRAK v. Morgan*, 536 U.S. 101, 115-16 (2002)). "Workplace conduct is not measured in isolation." *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 270 (2001).

For example, in *George v. Leavitt*, 407 F.3d 405 (D.C. Cir. 2005), the D.C. Circuit held that statements by three employees over a six-month period telling a plaintiff to "go back where she came from," separate acts of yelling and hostility, and allegations that the plaintiff was not given the type of work she deserved, were isolated instances that did not rise to the level of severity necessary to find a hostile work environment. *Id*. at 416-17. Similarly, in *Singh v. United States House of Representatives*, 300 F. Supp. 2d 48, 54-57 (D.D.C. 2004), this Court found that a plaintiff's allegations that her employer humiliated her at important meetings, screamed at her in one instance, told her to "shut up and sit down" in one instance, and was "constantly hostile and hypercritical" did not amount to a hostile work environment, even though these actions may have been disrespectful and unfair.

The Amended Complaint alleges the following in support of Mr. Badibanga's harassment claim: (1) the harassment included "receiving multiple disciplinary actions for things for which he was not responsible," Am. Compl. ¶ 21; (2) Mr. Craig said that there were many Americans searching for a job and it would be easy to replace Mr. Badibanga, *id*. ¶ 58; and (3) in March 2008 he was placed on administrative leave due to a false accusation of misconduct, *id*. ¶ 22. In response to the Hospital's motion to dismiss, Mr. Badibanga attempts to bolster the Amended Complaint via the submission of his own affidavit. *See* Pl.'s Opp'n [Dkt. # 15], Ex. 1 (Badibanga Aff.). Mr. Badibanga alleges in his Affidavit that: (1) in March of 2006, a nurse falsely told Ms. Mattia that Mr. Badibanga had been rude, thus causing a delay in patient care; (2) when he delayed

a blood draw for one hour due to a staff shortage, supervisors issued a pre-termination hearing letter, and they did not do so when other workers similarly delayed; (3) Ms. Mattia told Mr. Badibanga that she was not going to hire any more African people; (4) when Mr. Badibanga was home ill, he was erroneously deemed to be on vacation; (5) when a doctor complained in September 2006 regarding a rude male employee, Ms. Mattia falsely assumed that the complaint was about Mr. Badibanga; and (6) Ms. Mattia criticized Mr. Badibanga's foreign accent in front of coworkers on more than one occasion.  *See* Badibanga Aff. ¶¶ 7-9, 13, 15, & 17.

These allegations are insufficiently severe and pervasive to constitute an hostile work environment.  While Mr. Badibanga may have been genuinely offended at the alleged comments — that he was easy to replace with an American, that Ms. Mattia would not hire other Africans, and criticism of his accent — these constitute isolated incidents that simply do not amount to a discriminatory change in the terms and conditions of employment. *Faragher*, 524 U.S. at 778.  As the Supreme Court has indicated, Title VII is not a civility code. *Id.*; *see Harris*, 510 U.S. at 21 ("'[M]ere utterance of an . . . epithet which engenders offensive feelings in an employee' does not sufficiently affect the conditions of employment to implicate Title VII") (quoting *Meritor*, 477 U.S. at 91).  Further, the allegations that are unrelated to Mr. Badibanga's race/ethnicity, such as his allegations that he was disciplined when others were not and that he was falsely accused of being rude, cannot support a claim for hostile work environment. *See, e.g.*, *Kelley v. Billington*, 370 F. Supp. 2d 151, 157 (D.D.C. 2005) (to sustain a hostile work environment claim, the plaintiff must show that he was discriminated against *because of* his status).  Because the Amended Complaint fails to state a hostile work environment claim, the Hospital's motion for partial dismissal will be granted and Count II will be dismissed.

## IV.  CONCLUSION

For the reasons stated above, Defendant's motion for partial dismissal [Dkt. # 13] will be granted and Count II of the Amended Complaint will be dismissed.  A memorializing Order accompanies this Memorandum Opinion.


Date: January 20, 2010                                        /s/
                                                ROSEMARY M. COLLYER
                                                United States District Judge